UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LAURA GOODEN

VERSUS

REGIONS BANK, BRANDY ASHLEY
AND A-Z INSURANCE COMPANY

CIVIL ACTION

NO. 10-299-BAJ-SCR

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a motion by defendant, Regions Bank, for summary judgment (doc. 17). Plaintiff, Laura Gooden, has filed an untimely opposition (docs. 21, 22) and defendant has replied to the opposition (doc. 27). Jurisdiction is alleged under 28 U.S.C. 1331.

**BACKGROUND**

Plaintiff was a head teller at Regions Bank until her employment was terminated in 2007. On April 27, 2010, she filed the complaint in this matter alleging that her supervisor at Regions Bank, Brandy Ashley, discriminated against her on the basis of race and that her employment was terminated because of racial discrimination (doc. 3). On October 29, 2010, plaintiff's state law claim of race discrimination was dismissed as prescribed (doc. 11). On December 8, 2010, all claims asserted against defendant, Brandy Ashley, were dismissed pursuant to Federal Rule of Civil Procedure 4(m) (doc. 15).

Regions Bank filed the present motion for summary judgment on June 30, 2011, asserting that plaintiff cannot establish a prima facie case of discrimination because she cannot show that she was treated differently from similarly situated

individuals. Regions Bank further asserts that plaintiff cannot show that the legitimate, non-discriminatory reasons articulated by Regions Bank for the employment decision are pretextual. Plaintiff failed to oppose the motion within the time set forth by Local Rule 7.4,[1] but filed an opposition in two separate filings on August 1, 2011 (doc. 21) and on August 3, 2011 (doc. 22).[2]

As is required by Local Rule 56.1, defendant has submitted a separate document stating facts which it claims are undisputed and material to the claim asserted by plaintiff. Having thoroughly reviewed the opposition to the motion, the Court notes that the only document submitted by plaintiff that even remotely addresses the facts submitted by defendant pursuant to Local Rule 56.1 is a document captioned, Plaintiff Statement of Facts for Her Motion in Opposition of Defendant's Motion for Summary Judgment (doc. 22-1). That document, however, provides only conclusory argument and cites no evidentiary basis upon which plaintiff might controvert defendant's statement of undisputed facts. Because plaintiff has not controverted defendant's statement of undisputed material facts, the

---

[1]Local Rule 7.4 provides, in pertinent part, that "[e]ach respondent opposing a motion shall file a response, including opposing affidavits, memorandum and such supporting documents as are then available within 21 days after service of the motion."

[2]Though the opposition documents were filed out of time and without leave of Court, the Court, in the interest of justice, has considered the documents in this ruling.

following facts submitted by defendant pursuant to Local Rule 56.1 are deemed admitted for purposes of the present motion[3]:

1. Plaintiff's supervisor at the Brownsfield branch of Regions Bank was the branch manager, Brandy Ashley. Within a year of moving to the Brownsfield branch, Brandy Ashley promoted plaintiff to teller supervisor, or "head teller," at the Brownsfield branch. Ex, A, Pl. Dep., at pp. 24-26.

2. As head teller, plaintiff was responsible for "lead[ing] and direct[ing] teller staff and teller operations." Ex. B-1, Head Teller Job Description.

3. Plaintiff was also responsible for providing input on personnel actions concerning tellers and supervising all teller-related personnel tasks. *Id.; see also*, Ex. A., at p. 23.

4. As head teller plaintiff was also responsible for the vault and for "buying and selling money" from the vault to other tellers. *Id.* at pp. 26-27.

5. Plaintiff was also responsible for ordering money for the branch, for counting money once it was delivered, and for ensuring that the vault totals balanced in the computer. *Id.* at p. 32.

6. As head teller, plaintiff was responsible for auditing the drawers of the tellers she supervised to ensure that they were in balance. *Id.* at 37.

7. One of a teller's fundamental tasks is to ensure that cash is handled properly. Ex. B, Rome Decl.

8. Each year, Regions Bank tellers attend Mandatory Annualized Compliance training that emphasizes Regions Bank's cash-handling/security policies. *Id.*

---

[3]Local Rule 56.2 provides, in pertinent part, that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Only facts material to the present ruling are recited herein.

9. One of the most important cash-handling requirements at Regions Bank is that money and teller, or branch, keys should never be left unattended. *Id.*

10. A teller should never leave cash in a teller window, where it is accessible–and could be taken–by customers or other tellers. *Id.*

11. Regions Bank requires that all vaults and teller drawers be locked and secured when not attended; they should never be left open. *Id.*

12. Even one violation of Regions Bank's cash-handling policy is sufficient for termination. *Id.*

13. Regions Teller Manual provides that tellers are required to keep their cash under tight control at all times. *Id.*

14. The decision to terminate a teller or a head teller at Regions Bank rests with the Human Resources and/or the Associate Relations Dept. Ex. B. Rome Decl.

15. Branch managers do not have the authority to terminate tellers or head tellers. *Id.*

16. The Human Resources Manager looks at a number of issues in determining whether termination is appropriate, including the status of the employee, previous performance issues, and the frequency of the performance issues. *Id.*

17. On August 29, 2006, while plaintiff was head teller at the Brownsfield branch, she was issued a "Memo to File" for leaving a coin vault open when she left work; the open vault was discovered that night by the cleaning crew.

18. Plaintiff acknowledged the above security violation and that discipline for having committed the security violation would have been appropriate. Ex. A, at pp. 86-87.

19. One week later, on September 5, 2006, plaintiff was issued a Memorandum of Understanding for leaving cash unattended in her teller window. Ex. A-4; Ex. A, at p. 87.

20. On January 23, 2007, plaintiff was given an Official Warning for violating cash-handling procedures again. E. A-5; Ex. A, at pp. 89-90.

21. Plaintiff was written up by her branch manager and the branch manager's supervisor for leaving money unsecured in the vault, for letting other tellers get coins from the coin vault without her assistance and for falsifying bank documentation to show that the vault was in balance when it was actually not in balance. Ex. A-5; Ex. A, at p. 105.

22. The Official Warning put plaintiff on a "180-day improvement period and informed her that "any other misuse of cash handling could result in termination." Ex. A-5.

23. Less than a week later, on February 1, 2007, plaintiff again left a night deposit envelope with cash in her teller window. Plaintiff also left a $300,000 cash shipment in her coin vault unlocked, and thus accessible to anyone in the branch. The following day, plaintiff walked away from her teller window, leaving a night drop bag filled with $4,800 in cash unsecured. Plaintiff also left an order of cash for a small-business customer, which she had forgotten to give to the customer that day, in the vault, unsecured. Ex. A-7; Ex. B-3.

24. Because of the violations of February 1 and 2, 2007, the branch manager and the branch manager's supervisor reported the cash-handling issues to Human Resources. Ex. A-7.

25. Cindy Rome, Human Resources Manager, made the decision to terminate plaintiff's employment. Ex. B, Rome Decl.

26. Kathy Griffin, plaintiff's alleged comparator, was not a head teller but a teller. Ex. D, Griffin Dep., at p. 8.

27. Griffin's first write-up for leaving cash unattended occurred on February 2, 2007, the same day that plaintiff had the cash-handling violation that led to her termination; Griffin received a Memorandum of Understanding that day for leaving the coin vault open. Ex. B-4.

28. Griffin received a second write-up–and Official Warning–on February 28, 2007, for leaving her keys in her teller window. Ex. B-4.

29. Griffin did not receive a write-up after the Official Warning. Ex. B, Rome Decl.

30. A few weeks before plaintiff's employment was terminated, Rome made the decision to terminate a teller at the Brownsfield branch, Ms. Sheila Saniford. Ms. Saniford is white. *Id.*

31. Ms. Saniford was terminated after five violations of Regions Bank policy during a six-month period. She was terminated on January 24, 2007, for a cash-handling violation. *Id.*

(Doc. 17-1).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations,

unsubstantiated assertions or a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To survive summary judgment on a claim of unlawful employment discrimination, a plaintiff must prove that there is a genuine dispute of material fact concerning his prima facie case. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)). "In order to show a prima facie case of discriminatory discharge, a plaintiff must first establish that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was replaced by someone outside of the protected class." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007) (citing, *Rutherford v. Harris County,* 197 F.3d 173, 179-80 (5th Cir. 1999).  A plaintiff's establishment of a *prima facie* case gives rise to an inference of discrimination which shifts the burden of proof to the defendant who must then articulate a legitimate, non-discriminatory reason for the challenged employment action. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Once the defendant asserts such a reason, the inference of discrimination raised by the *prima*

*facie* case drops from the case.  At that point, summary judgment is appropriate unless the plaintiff can prove that the defendant's rationale is pretextual.  *Id.*

In opposition to the motion for summary judgment, plaintiff repeats the conclusory allegations set forth in the complaint without setting forth any factual support.  In concluding the two page opposition memorandum, plaintiff also asserts:

> The defendants have failed to establish all elements of cause of action which would, under law, entitle mover to a summary judgment. And their instructing a potential witness not to discuss the case with plaintiff's attorney prevents plaintiff proving her case.

(Doc. 22-1, p. 2).

As is noted *supra*, upon the filing of a proper motion for summary judgment, it is the non-movant who bears the burden of setting forth specific facts to show that there is a genuine dispute for trial.  The record demonstrates that plaintiff has failed to do so.  Plaintiff's allegation that defendant has instructed a potential witness not to discuss the case fails to justify plaintiff's absolute failure to set forth any evidence to establish a genuine issue of fact as to any element of the case.

Even if the Court were to assume that plaintiff had established a prima facie case of discrimination (a finding the Court does not make herein) the Court notes that defendant has articulated legitimate, non-discriminatory reasons for the challenged employment action.  Therefore, plaintiff bears the burden of setting forth evidence to establish that plaintiff's reasons for the decision are pretextual.

As is noted *supra,* plaintiff has not met that burden.

**CONCLUSION**

For all of the foregoing reasons, the motion by defendant, Regions Bank, for summary judgment (doc. 17) is **GRANTED**, and judgment shall issue separately, dismissing this matter.

Baton Rouge, Louisiana, January 31, 2012.

_____
BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA